J. FREDERICK ACKERMAN, Appellant, *v.* R. FULTON RUBENS, Respondent.

SALE — REFUSAL OF VENDEE TO COMPLETE PURCHASE — RESALE AT PUBLIC AUCTION — PURCHASE BY VENDOR — WHEN AMOUNT REALIZED EVIDENCE OF VALUE IN ACTION TO CHARGE VENDEE WITH DEFICIENCY. Where the vendee of personal property, under an executory contract of sale which provided that the title should not pass until the purchase price should have been fully paid, has refused to complete his purchase, and the vendor has offered it for sale at public auction which was fairly conducted by a licensed auctioneer and made at a reasonable time and place after adequate opportunity to see the property, due advertisement to the public and personal notice to the vendee, when the real purpose is to ascertain the value of the property, the fact that the vendor outbid all competitors does not render the sale invalid upon the ground that he could not sell to himself, and in an action against the vendee to recover a deficiency arising on the sale the amount realized thereon is lawful evidence of the value of the property and the direction of a verdict for nominal damages only is reversible error.

*Ackerman* v. *Rubens,* 44 App. Div. 227, reversed.

(Argued May 2, 1901: decided June 11, 1901.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 22, 1899, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

On the 28th of July, 1897, at the city of New York, the plaintiff sold his yacht *Iola* to the defendant for the sum of $2,250, by an executory contract which impliedly provided that the title should not pass until the purchase price should have been fully paid. The defendant refused to complete his purchase, whereupon the plaintiff gave him written notice that he should sell the yacht " either by public sale at auction, or private negotiation, whichever in my judgment will result in obtaining the most favorable price, and in the event of any deficiency in the sum so obtained and the contract price as agreed upon as per contract of July 28th, 1897, namely, $2,250, I shall hold you for such deficiency." The defendant paid no attention to this notice and had no further communication with the plaintiff at any time on the subject of selling the yacht.

The plaintiff promptly placed the vessel in the hands of an experienced yachtsman for sale, but after due effort no sale could be made, although she was advertised in a prominent New York daily newspaper every Sunday during the months of August and September. Thereupon the plaintiff placed her in the hands of a public auctioneer for sale at auction, and on the 29th of September gave the defendant personal notice in writing that she would be sold at auction on the 6th of October, 1897, at one o'clock P. M., at the store of the auctioneer, No. 29 Burling Slip, in the city of New York. In the advertisement of the auctioneer she was fully and accurately described, and notice was given that she could be " seen at Atlantic Yacht Club Basin, foot of 55th street, Brooklyn." At the time and place named she was sold at auction in the usual way to an agent of the plaintiff for $1,100, which was the highest, but not the only, bid, as a stranger had run her up to $1,050. The expenses of the sale were $90, of which $40 was for advertising, hand bills and postage, and $50 was for the serv-

ices of the auctioneer. The plaintiff credited the net proceeds of the sale upon the purchase price and sued the defendant for the balance, amounting to $1,240. The defendant, in his answer, pleaded a general denial, and also that he was induced to purchase the yacht by certain fraudulent representations made by the plaintiff as to her condition, but on the trial he gave no evidence in support of that allegation or any other. When the plaintiff rested, after proving the foregoing facts, the trial court, upon motion of the defendant, directed a verdict for the plaintiff for nominal damages only, and an exception was duly taken. The jury rendered a verdict for six cents, and the judgment entered accordingly having been affirmed by the Appellate Division, the plaintiff came here.

*Charles D. Ridgway* for appellant. The only object and purpose of the resale under the facts in the case was to ascertain the amount of damages the plaintiff sustained by the defendant's breach. (*Roach* v. *Duckworth*, 95 N. Y. 391.) The only duty resting upon the plaintiff was to sell within a reasonable time, to exercise good faith to effect a sale at the best price he could obtain, to follow any proper instructions the defendant might give as to the time and manner in which the sale should be made, and to give credit on the contract for the amount received. (*Moore* v. *Potter*, 155 N. Y. 487; *Smith* v. *Pettee*, 70 N. Y. 13; *Tilt* v. *La Salle Silk Manfg. Co.*, 5 Daly, 20; *Sands* v. *Taylor*, 5 Johns. 395.)

*Percival S. Jones* and *Henry J. McCormick* for respondent. A vendor cannot sell a thing to himself. It is impossible to be vendor and vendee at one and the same time. (Benj. on Sales [6th ed.], 1, 2; 2 Kent's Comm. [13th ed.] 262–468; 2 Am. & Eng. Ency. of Law, 446; *U. Ins. Co.* v. *T. Ins. Co.*, 17 Barb. 132; *Conkey* v. *Bond*, 34 Barb. 282; *B. S. E. Works* v. *S. M. Ins. Co.*, 17 N. Y. 403; *Gardner* v. *Ogden*, 22 N. Y. 347; *Schermerhorn* v. *Talman*, 14 N. Y. 117; *Barker* v. *M. Ins. Co.*, 2 Mason, 369.) If the alleged auction was held on the theory that the plaintiff vendor was selling as the agent and for the account of the defendant vendee, the

plaintiff under the law was debarred from purchasing, and the pretended sale was a fraud. (*Church* v. *M. Ins. Co.*, 1 Mason, 341; *Van Epps* v. *Van Epps*, 9 Paige, 241; *Gardner* v. *Ogden*, 22 N. Y. 327; *Copelund* v. *M. Ins. Co.*, 6 Pick. 198; *U. Ins. Co.* v. *T. Ins. Co.*, 17 Barb. 132; *Conkey* v. *Bond*, 34 Barb. 286; *Michaud* v. *Girod*, 16 Curtis, 191; *Ritt* v. *W. M. & F. Ins. Co.*, 41 Barb. 356; *L. O. Co.* v. *Kearney*, 14 La. Ann. 352; *Roach* v. *Duckworth*, 95 N. Y. 401.)

VANN, J.   When the vendee of personal property, under an executory contract of sale, refuses to complete his purchase, the vendor may keep the article for him and sue for the entire purchase price; or he may keep the property as his own and sue for the difference between the market value and the contract price; or he may sell the property for the highest sum he can get, and after crediting the net amount received, sue for the balance of the purchase money. (*Moore* v. *Potter*, 155 N. Y. 481; *Dustan* v. *McAndrew*, 44 N. Y. 72.)

While the courts below recognized this rule they did not apply it, for they held that the sale at auction was no sale at all, because a man cannot sell to himself. This would be true of an attempt to make a private sale to one's self, but it is not true of a sale at public auction, fairly conducted by a licensed auctioneer, and made at a reasonable time and place, after adequate opportunity to see the property, due advertisement to the public and personal notice to the vendee, when the real purpose is to ascertain the value of the property. The law is satisfied with a fair sale, made in good faith, according to established business methods, with no attempt to take advantage of the vendee. Such, as the jury might have found, was the sale under consideration. The primary object of the sale was not to pass title from the vendor, but to lessen the loss of the vendee. The subject of the sale had no market value, and the amount for which it could be sold depended largely upon taste and fancy. A public competitive sale by outcry to the highest bidder, duly advertised and made upon

notice to the vendee, is a safer method of measuring the damages than a sale by private negotiation, which has been held sufficient. (*Van Brocklen* v. *Smeallie*, 140 N. Y. 70.) A fair public sale, in the absence of other evidence, is competent evidence of value. The plaintiff did not conduct the sale himself, but placed the yacht in the hands of a public auctioneer for sale without reservation, on account of whom it might concern. While the auctioneer was his agent he could not lawfully control him so as to prevent an honest sale. The defendant had notice and an opportunity to protect himself, yet he asked for no postponement, made no request, gave no instructions and did not even appear at the sale. If the plaintiff's agent had refrained from bidding, the property would have gone to a stranger for a less sum than it finally brought, and yet, in that event, even according to the defendant's theory, the sale would have been valid. The fact that the plaintiff outbid all competitors did not render the sale invalid, for he had a right to bid, provided he took no advantage by trying to prevent others from bidding or by disregarding any reasonable request of the defendant, or in any other way. If he had acted as auctioneer, or in collusion with the auctioneer, or there was any evidence of furtive effort on his part, or anything to challenge the fairness of the sale, the action of the trial court in virtually withdrawing the case from the jury might have been justified, but the mere fact that he was the highest bidder at a public sale, the fairness of which is not questioned in any other respect, did not warrant the direction for nominal damages only. The object of the sale was to measure the damages caused by the default of the defendant, and they were diminished instead of being increased by the action of the plaintiff.

We forbear further discussion, because the question is no longer open in this court, as it was involved in a case recently decided by us upon careful consideration after full discussion by counsel. (*Moore* v. *Potter*, 155 N. Y. 481.) In that case, as in this, the property was sold at auction to a representative of the vendor, and the point was distinctly made on the argu-

ment before us that as the vendor was the real purchaser, "the sale was colorable only and absolutely without effect upon the rights of the parties." While we did not discuss the question in our opinion, it was necessarily involved, was passed upon in consultation and decided. Both upon principle and authority we think that the amount for which the yacht was struck off to the vendor at an auction sale fairly conducted, upon notice to the vendee, with no suspicion of fraud or undue advantage, was lawful evidence of the value of the yacht and presented a case for the consideration of the jury. The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

HAIGHT, J. (dissenting). The rule of damages for a breach by the buyer of a contract for the sale of personal property is well settled. The seller may store the property for the buyer and sue for the purchase price; or may sell the property as *agent* for the vendee and recover any deficiency resulting; or may keep the property as his own and recover the difference between the contract price and the market value at the time and place of delivery. If he sells as agent he may sell either at public or private sale, but it must be a sale made in good faith and in such manner as to produce most nearly the full value of the property. Selling as agent he cannot sell to himself. Selling involves contracting and a person cannot contract with himself and bind others thereby. If he could sell to himself publicly he could privately, and thus be able to perpetrate a fraud or an injustice which might be difficult to detect or prove. ( *Van Brocklen* v. *Smeallie,* 140 N. Y. 70, 75; *Pollen* v. *Le Roy,* 30 N. Y. 549, 557; *Dustan* v. *McAndrew,* 44 N. Y. 78; *Hayden* v. *Demets,* 53 N. Y. 426; *Bain* v. *Brown,* 56 N. Y. 285.)

I fully concur in all that was said in the opinion in the case of *Moore* v. *Potter* (155 N. Y. 481), but I do not understand that the question here under consideration was raised or involved in that case. The sale then under consideration was not made to the seller, but to another person. It is true the

answer charged collusion, but the evidence upon that issue was not sufficient to carry the question to the jury. The sole ground upon which the General Term reversed the judgment entered upon a verdict directed in favor of the plaintiff was that the sale was made after a receiver of the defendant had been appointed and that such sale could not be made without the consent of the court appointing the receiver. The question considered and determined in that case was whether property contracted to be sold which the purchaser had refused to take passed to and vested in the receiver of the purchaser so that it could not be sold without leave of the court. Upon this question the rule permitting the sale of personal property by the seller as the agent of the purchaser for the purpose of recovering and determining the damages of the seller was considered, and it was held that the power to sell, as agent, was limited in meaning and did not operate to vest the title of the property in the receiver in such a sense as to prohibit his right to sell.

In this case the sale was made by the seller to himself. It was made through the agency of an auctioneer it is true, but the auctioneer was his agent and represented him in the transaction.

I think the judgment should be affirmed.

PARKER, Ch. J., BARTLETT and MARTIN, JJ., concur with VANN, J.; GRAY and WERNER, JJ., concur with HAIGHT, J.

Judgment reversed, etc.